JACOBS ET AL., APPELLEES, *v.* BENEDICT, PRESIDENT, BOARD OF
EDUCATION, ET AL.

(No. C-73315—Decided November 19, 1973.)

*Mr. Paul H. Tobias,* for appellees.
*Mr. Simon L. Leis, Jr.,* prosecuting attorney, and *Mr. Arthur M. Ney,* for appellants.

REILLY, J. This is an appeal from an order of the Court of Common Pleas of Hamilton County denying defendants, the appellants herein, a new trial. (See 35 Ohio Misc. 92.) The record shows that plaintiff William Jacobs, a minor and an appellee herein, who is fifteen years old and a student at Colerain Junior High School, filed, along with his mother, a complaint for a declaratory judgment and injunction against the board of the Northwest Local School District, the president of the board, the superintendent of schools, and the principal and assistant principal of the Colerain Junior High School.

The case involves hair styling which, to say the least, is a somewhat controversial topic. In brief, plaintiffs sought a declaratory judgment to the effect that the board's rules concerning hair length and styling were a nullity; a permanent injunction against defendants 'from interfering

with William Jacobs' hair length and style; and an order restraining the board from enforcing penalties against him. Secondarily, plaintiffs further prayed for $850 damages.

The facts are that defendant board of education of the Northwest School District adopted a dress code for students which prohibited mustaches and regulated hair length as well as sideburns. Plaintiffs refused to comply. Penalties were imposed upon William Jacobs, including his removal from office as president of student council and a member of the honor society, a reduction of grades, and a suspension from school. Subsequently, the issues were joined and the case heard by the trial court.

In concluding its carefully drafted decision, the trial court wrote:

"Educational experts who testified as witnesses for the parties were in agreement that the educational process involves much more than just the teaching of subject matter. Education involves teaching students to think; to understand who they are; where they are in relation to others, to their community and to their country; understanding their privileges and responsibilities as citizens; and as part of this, learning the meaning of discipline and of limits. Certainly the community and the parents have a right to look to the schools for this type of learning and reasonable school rules do have a clear relationship to this part of the educational process. Nevertheless, in determining whether a proposed rule is reasonable boards of education must take into account the extent to which the rule invades the privacy and dignity of the student and, as O. R. C. 3313.20 requires, whether such a rule is necessary.

"A rule restricting hair length and style and prohibiting mustaches affects the student in the most intimate and personal way. History, literature and simple observation make this abundantly clear. Furthermore, 'hair' rules control the student not only during the 35 hours per week he spends in school but control his appearance the other 133 hours of the week as well. It seems belaboring the obvious to point out that there are thousands of ways for schools to teach discipline and limits and an awareness of relation-

ships with others and with the community without requiring that students cut off their hair and shave their mustaches. It seems equally obvious that to teach students that they must accept arbitrary authority, particularly in a matter as personal as this, is wholly alien to our concepts of a free society and the dignity of the individual.

"Finally it is argued that the rule in question represents the ideas, thinking and demands of the majority of the community, the parents and the students. Their wish to regulate themselves and their own children in a certain fashion is certainly entitled to respect but they have no right to impose their personal preferences on plaintiffs. Forcing the individual to conform simply for conformity's sake is antithetical to our American tradition of rugged individualism and wholly repugnant to the laws and Constitution of Ohio.

"Accordingly, the relief prayed for by plaintiffs should be granted in full with the exception of the prayed for damages. Damages may not be recovered against public officials acting in their official capacity without proof of malice, which was wholly absent here."

Defendants moved for a new trial, which was overruled; whereupon, they perfected this appeal and advanced the following assignments of error:

1. "The Common Pleas Court of Hamilton County, Ohio, erred in determining that the personal taste of a 15 year old public school student outweighs the interest of the general public in the good order and discipline of its tax supported schools."

2. "The Common Pleas Court of Hamilton County, Ohio, erred in determining that the freedom of a 15 year old public school student in choosing his hair style is a fundamental right protected under the Constitution of the United States and the State of Ohio."

3. "The Common Pleas Court of Hamilton County, Ohio, erred in substituting its judgment for that of the Board of Education in the adoption and promulgation of rules and regulations as to a dress and grooming code."

4. "The Common Pleas Court of Hamilton County, Ohio, erred in refusing to accept the presumption of va-

lidity of the rules and regulations of the Board's dress and grooming code; erred in determining upon whom the burden of proof rested to overcome the presumption; and erred in the degree of proof required to overcome the presumption of validity."

5. "The decision of the Court of Common Pleas of Hamilton County, Ohio, is against the manifest weight of the evidence and is contrary to law."

Counsel for defendants, in their brief, indicate the assignments of error are interrelated and are considered together. Consequently, this court will follow the same pattern.

At the outset, we note the basic rule that a Court of Appeals cannot substitute its judgment for that of the trial court. The Supreme Court wrote, in *Trickey* v. *Trickey* (1952), 158 Ohio St. 9, at page 14:

"This court has repeatedly held that in an appeal on questions of law the Court of Appeals can not substitute its judgment for the judgment of the trial court. *In re Estate of Johnson*, 142 Ohio St., 49, 49 N. E. (2d), 950; *Bishop* v. *East Ohio Gas Co.*, 143 Ohio St., 541, 56 N. E. (2d), 164; *State, ex rel. Squire, Supt.*, v. *City of Cleveland*, 150 Ohio St., 303, 82 N. E. (2d), 709; *In re Estate of Murnan*, 151 Ohio St., 529, 87 N. E. (2d), 84; *Henry* v. *Henry*, 157 Ohio St., 319, 105 N. E. (2d), 406."

Further, concerning the weight of the evidence, we note 3 Ohio Jurisprudence 2d 817, Appellate Review, Section 819, as follows:

" * * * it has been stated that a reviewing court can reverse a judgment upon an assignment of error involving the weight of the evidence only when the verdict is so manifestly contrary to the natural and reasonable inferences to be drawn from the evidence as to produce a result in complete violation of substantial justice, and that such a court is not authorized to reverse on such ground unless it is justified in inserting in its journal entry that substantial justice has not been done to the complaining party.

"A reviewing court will not disturb the judgment of the trial court on the ground of insufficiency of the evidence unless it clearly appears that the conclusion reached can-

not be supported by any rational view of the evidence."

R. C. 3313.20, in pertinent part, is as follows:

"The board of education shall make such rules and regulations as are necessary for its government and the government of its employees, pupils of its schools, and all other persons entering upon its school grounds or premises. * * *,"

The key word in the code section is "necessary." It is defined in Webster's Third New International Dictionary (1970), as follows:

" * * * that must be by reason of the nature of things; that cannot be otherwise by reason of inherent qualities; that is, or exists or comes to be by reason of the nature of being and that cannot be or exist or come to be in any other way * * *of, relating to, or having the character of something that is logically required or logically inevitable or cannot be denied without involving contradiction * * *."

We find, upon a careful review of the record, that the hair regulations are not actually necessary for the government of the schools. Moreover, there is not, in point of fact, evidence that such regulations serve a useful purpose. Further, we note that the regulations do not apply to girl students. Hence, in that context, they are discriminatory as applied to boys.

We do not find that the trial court lost its way or abused its discretion in this case. Therefore, for the foregoing reasons, the judgment of the trial court is affirmed.

*Judgment affirmed.*

WENDT, P. J., and STRAUSBAUGH, J., concur.

STRAUSBAUGH and REILLY, JJ., of the Tenth Appellate District, and WENDT, J., of the Court of Common Pleas of Coshocton County, sitting by designation in the First Appellate District.

WENDT, J., retired, assigned to active duty under authority of Section 6(c), Article IV, Constitution.