DECISION AND JUDGMENT ENTRY
This is an appeal from a judgment of the Erie County Court of Common Pleas which, following a trial to the bench, found appellant, Orlando Keys, guilty of violating R.C. § 2907.04(A), corruption of a minor, and sentenced him to twelve months incarceration. For the reasons stated herein, this court affirms the judgment of the trial court.
Appellant sets forth the following two assignments of error:
"ASSIGNMENTS OF ERROR
 "I AS A MATTER OF LAW MR. KEYS DID NOT HAVE THE REQUISITE MENTAL CULPABILITY TO HAVE ACTED RECKLESSLY ACCORDING TO O.R.C. § 2901.22 AND THEREFORE COULD NOT HAVE BEEN FOUND GUILTY OF VIOLATING O.R.C. § 2907.04(A) CORRUPTION OF A MINOR.
 "II THE VERDICT RENDERED BY THE TRIAL COURT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
The following facts are relevant to this appeal. Appellant was indicted on one count of corruption of a minor, a violation of R.C. § 2907.04(A). Appellant was tried in December 1997.
At trial, the victim, who had turned fifteen by the time of trial, testified that she had seen appellant in the neighborhood and he had waved to her and her friend. Appellant lived next door to a woman who was one of the victim's babysitters. The victim testified that she never indicated her age to appellant and appellant did not ask her age. The victim testified that she was wearing her Catholic elementary school uniform when she met appellant. She testified that on June 7, 1997, appellant came into her house while she and a female friend were home alone. Appellant followed her and her friend upstairs to play video games and after her friend went downstairs, appellant forcibly removed her shorts and underwear and had sexual intercourse with her. The victim testified that she resisted appellant and told him to stop; she also testified that she called for her friend.
The victim's mother testified that she learned about appellant's sexual contact with her daughter on approximately June 20, 1997. The victim's mother testified that when appellant was confronted by her and others about his actions, appellant initially denied any sexual relationship. However, the victim's mother testified that appellant then asked her to go into another room and then appellant admitted that he had sexual intercourse with the victim; appellant then left the room and when he came back, he stated that he had not touched the victim.
The police officer who conducted the investigation in this case testified that he interviewed the victim, her friend who had been at the victim's home on the day of the incident and appellant. The officer testified that appellant denied that he raped the victim but admitted that he had consensual sex. Appellant told the officer that the victim had told him she was eighteen.
The defense moved for acquittal after the state rested. The trial court denied the motion.
The victim's friend who had been at the victim's home on June 7, 1997 was called by the defense. She testified that the victim and appellant went upstairs together and that she did not hear anything. On cross-examination, the friend admitted that she had also told the police officer that she did not hear anything but admitted later in her interview that she heard the victim say "Ow, ow, ow." On cross-examination, the state played a videotape of the friend's interview with the police officer on June 21, 1997 and demonstrated several inconsistencies in the friend's statement to the officer and her trial testimony. These inconsistencies concerned when she first met appellant; when she told appellant the victim's age; whether or not appellant told her that he had sex with the victim; what she saw and heard on the day on the incident; and when and how many times she went upstairs. The friend admitted that she saw appellant and the victim both naked together. The friend testified that when appellant came downstairs, he admitted to her that he had sex with the victim. The friend testified that appellant told her that the victim "only took this much" of his penis, motioning with his fingers. The friend stated that the victim told her that she had sex with appellant. The friend admitted on cross-examination that the victim never told her that the victim lied to appellant about her age. The friend also admitted on cross-examination that she was dating appellant at the time of her interview with the police.
Appellant testified that he had two prior convictions, one for felonious assault and another for drug abuse. He also testified that he violated probation twice. Appellant testified that during a telephone conversation the victim told him she was eighteen and during another conversation that she had graduated from the twelfth grade. Appellant testified that he first learned that the victim was less than eighteen after they had consensual sex. He also testified about a telephone conversation with the victim during which he asked her why she lied about her age; appellant testified that the victim laughed. On cross-examination, appellant admitted to other probation violations, including abuse of cocaine in 1994 and moving without reporting a change of address in 1995. Appellant also admitted that he knew that the victim's friend was seventeen and that she referred to the victim as her little sister; he admitted that he never asked anyone about the victim's age. He also admitted that during his police interview, he never told the officer that the victim told him she had graduated from the twelfth grade. Appellant testified that he initially lied to the victim's mother when he told the victim's mother that he had not touched the victim.
The defense rested and moved for acquittal. The trial court denied the motion.
In rebuttal, the state then called appellant's parole officer since October 1996. The parole officer testified that when he talked with appellant about the victim, appellant told him that the sex was consensual and the victim told appellant she was twenty.
The trial court found appellant guilty of the charge. On February 10, 1998, appellant was sentenced. Appellant filed a motion for delayed appeal on July 28, 1998 and on August 26, 1998, this court granted that motion.
This court will address both assignments of error together as in the first assignment of error appellant argues the sufficiency of the evidence and in the second assignment of error appellant argues the weight of the evidence. In State v. Jenks
(1991), 61 Ohio St.3d 259, paragraph two of the syllabus, the Supreme Court of Ohio stated:
 "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."
In State v. Thompkins (1997), 78 Ohio St.3d 380, 386, the Ohio Supreme Court stated that "the legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different." The court also noted:
 "In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law." Id.
In contrast to sufficiency, the court stated the following in regard to weight of the evidence:
 "Weight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.'" (Citation omitted.) (Emphasis added by Court.) Id. at 387.
The Ohio Supreme Court also noted that when an appellate court reverses a verdict as against the weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the fact finder's resolution of the conflicting testimony. Id.
The witnesses presented conflicting evidence. Where there is conflicting evidence, it is for the trial court to assess the credibility of the witnesses and determine the facts. City ofToledo v Easterling (1985), 26 Ohio App.3d 59; Jacobs v Benedict
(1973), 39 Ohio App.2d 141.
After reviewing the record and the above law, this court concludes that any rational trier of fact could have found that the requisite mental culpability to have acted recklessly according to R.C. 2901.22 was proven beyond a reasonable doubt. Furthermore, the verdict is not against the manifest weight of the evidence.
Accordingly, both appellant's assignments of error are found not well-taken.
On consideration whereof, the court finds that the defendant was not prejudiced or prevented from having a fair trial, and the judgment of the Erie County Court of Common Pleas is affirmed. It is ordered that appellant pay court costs for this appeal.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Peter M. Handwork, J., Richard W. Knepper, P.J., Mark L. Pietrykowski, J., CONCUR.