This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
John L. Given ("Given") has appealed from a judgment of the Summit County Common Pleas Court, Juvenile Division, which denied his motion to modify custody of his minor son, Brian C. Given ("Brian"), and amended the visitation schedule. This Court affirms.
Given and Gina M. Sanzone ("Sanzone") were married in Akron, Ohio in 1981. Two children were born as issue of the marriage: Christina, born on February 9, 1984; and Brian, born on December 19, 1988. The parties moved to Texas and then Connecticut. However, Sanzone and the children moved back to Ohio, and the parties divorced in 1996, in the state of Connecticut. Pursuant to the divorce decree, Sanzone was granted sole legal custody of the children, and Given was awarded reasonable visitation. In 1998, Given moved to California. That same year Given filed a complaint in the Summit County Juvenile Court, requesting full faith and credit of the Connecticut divorce decree, and modification of custody. The trial court denied his motion to modify custody, but amended the visitation schedule.[1]
Given has timely appealed, and has asserted four assignments of error.
 ASSIGNMENT OF ERROR I THE TRIAL COURT ABUSED ITS DISCRETION IN FINDING THERE WAS NO CHANGE IN CIRCUMSTANCES FROM THE PRIOR DECREE.
Given challenges the trial court's denial of his motion to modify custody in his first assignment of error. Specifically, Given contends that the lower court erred in finding that there was not a change in circumstances as required under R.C.3109.04(E)(1)(a) which would statutorily justify consideration of his request for modification of parental rights and responsibilities. Although this Court agrees with Given's contention that the trial court abused its discretion in not finding that there was a change in circumstances sufficient to justify entertaining a request for modification of custody, we find no reversible error.
A trial court's finding as to whether there has been a change in circumstances under R.C. 3109.04(E)(1)(a), so as to warrant a change of custody will not be disturbed, absent an abuse of discretion. Davis v. Flickinger (1997), 77 Ohio St.3d 415, 416. Modification of parental rights and responsibilities under R.C.3109.04(E)(1)(a) is only permitted when: (1) there has been a material change in circumstances of either the child, or of either parent; (2) when it is certain to serve the best interest of the child; and (3) when one of the following applies:
 (i) The residential parent agrees to a change in the residential parent or both parents under a shared parenting decree agree to a change in the designation of residential parent.
 (ii) The child, with the consent of the residential parent or of both parents under a shared parenting decree, has been integrated into the family of the person seeking to become the residential parent.
 (iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child.
R.C. 3109.04(E)(1)(a). See, also, Smith v. Smith (Feb. 7, 2001), Lorain App. No. 00CA007619, unreported; and Davis v. Flickinger,supra (holding that a change in circumstances under R.C.3109.04(E)(1)(a) must be a "change of substance," but need not be a "substantial" change).
This Court finds that the trial court erroneously determined that there had not been a material change in circumstances. The record establishes that there had been changes in the family structure, the geographical proximity of the parties, in visitations, and in Brian, which, when viewed collectively, constitute a material change, or a "change in substance." Since the parental rights and responsibilites had been established in 1996, Christina, by agreement of the parties, moved out of Sanzone's home and moved in with Given. Brian, who was only seven years old at the time of the original decree, was nearly twelve years old at the time of the hearing on the modification request. When the parental rights and responsibilities were established, Sanzone and the children resided in Ohio and Given lived in Connecticut. At the time of the modification hearing Given was living across the nation in the state of California. Naturally, visitations changed. Furthermore, both parties testified that visitations had been affected by hostility which had grown between the parties.
While none of these changes if viewed independently would constitute a change as contemplated under R.C. 3109.04(E)(1)(a), when viewed collectively, it is clear that a change of substance had occurred. Certainly, the geographical proximity of a child to his or her father or mother can impact the parent-child relationship, and ultimately the bond they share. Therefore, it is important to take a change in geographical proximity into consideration in determining whether there has been a change in circumstances under R.C. 3109.04(E)(1)(a). This is particularly true where, as in the present case, the parent and child are separated by thousands of miles. We again note, however, that a change in geographical proximity alone would not be sufficient to constitute a change as contemplated under R.C. 3109.04(E)(1)(a). To hold otherwise would encourage parents to change their residence in an effort to modify custody, which would directly conflict with the intent of the statute. The Supreme Court of Ohio has explained:
 "The clear intent of [R.C. 3109.04] is to spare children from a constant tug of war between their parents who would file a motion for change of custody each time the parent out of custody thought he or she could provide the child a `better' environment. The statute is an attempt to provide some stability to the custodial status of the children, even though the parent out of custody may be able to prove that he or she can provide a better environment." Wyss v. Wyss
(1982), 3 Ohio App.3d 412, 416.
Davis v. Flickinger, supra, at 418.
It is also important for a trial court to take into consideration changes in the maturity of a child, changes in the parents' relationship, and changes in the structure of the family when making a R.C. 3109.04 "change of circumstances" determination. Again, however, a change in conditions in only one of these factors would most likely not constitute a "change of substance." See, e.g. Davis v. Flickinger, supra, at 420 (holding that, although a court can take the maturing of a child into consideration, "age alone is not a sufficient factor").
As previously mentioned, the record in this case establishes that there had been changes in the family structure, the geographical proximity of the parties, in visitations, and in Brian. These changes have required major adjustments to previous visitation and custody arrangements. The hostility between Given and Sanzone has adversely affected the visitation and custody arrangement. When these changes are viewed collectively they constitute a material change, or a "change in substance." SeeDavis v. Flickinger, supra, at 420 (holding that "even a small change in age, which requires a major adjustment to previous visitation or custody arrangements, when combined with hostility between the parents that adversely affects the visitation or custody arrangement, may constitute a significant change in circumstances to warrant a change in custody"). Accordingly, this Court finds that the trial court abused its discretion in finding that no change in circumstances had occurred. However, this Court finds that the lower court did not err in denying Given's request for modification. This is because in order for the trial court to modify custody in this case, the court would also have had to find that: (1) the modification would definitely serve Brian's best interest, and (2) that the harm likely to be caused by moving Brian to California would be outweighed by the advantages of the change of environment. R.C. 3109.04(E)(1)(a). The trial court expressly found that the modification would not be in Brian's best interest. Therefore, even if the trial court had properly found that a change in circumstances had occurred, the court could not have granted the modification.
Given's first assignment of error is overruled.
 ASSIGNMENT OF ERROR II THE TRIAL COURT ERRED AS A MATTER OF LAW IN NOT PROPERLY APPLYING AND FOLLOWING THE REQUIREMENTS OF [R.C.] 3109.04(E)(1) AND ABUSED ITS DISCRETION IN NOT REVIEWING THE BEST INTEREST OF THE CHILD STANDARD.
In his second assignment of error, Given claims that the trial court failed to consider all of the "best interest" factors under R.C. 3109.04(E)(1)(a) and (F)(1). This Court disagrees.
Given is correct in his contention that, in making a determination of the best interest of a child under R.C.3109.04(F)(1), a trial court must at least consider:
 (a) The wishes of the child's parents regarding the child's care;
 (b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;
 (c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;
 (d) The child's adjustment to the child's home, school, and community;
 (e) The mental and physical health of all persons involved in the situation;
 (f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;
 (g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;
 (h) Whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an adjudication; whether either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;
 (i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;
 (j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.
Given argues that the trial court failed to consider the best interest of the child because the court found that there had not been a change in circumstances. Given claims that although the court stated that it was "compelled to discuss the best interest of the minor child[,]" the court only took a few of the mandatory factors into account. In support, Given points to the judgment entry which discusses only some of the "best interest" factors enumerated in R.C. 3109.04(F)(1). This Court has previously explained that it is not necessary for a trial court to specifically address each statutory factor in its judgment entry. "[P]ursuant to Civ.R. 52, a trial court's judgment entry may be general unless one of the parties requests findings of fact and conclusions of law." Morrison v. Morrison (Nov. 15, 2000), Wayne App. No. 00CA0009, unreported, citing Wirt v. Wirt (Apr. 10, 1996), Wayne App. No. 95CA0041, unreported. Neither party in the present case made such a request, and the record indicates that the trial court considered the factors enumerated in R.C.3109.04(F)(1).
Given's second assignment of error is overruled.
 ASSIGNMENT OF ERROR III THE TRIAL COURT ABUSED ITS DISCRETION IN NOT PROPERLY APPLYING AND FOLLOWING THE REQUIREMENTS OF [R.C.] 3109.04(F)(1); AND ABUSED ITS DISCRETION IN THAT THE JUDGMENT IS NOT SUPPORTED BY THE MANIFEST WEIGHT OF THE EVIDENCE; AND, THE TRIAL COURT FAILED TO CONSIDER PROPERLY ADMITTED EVIDENCE.
Given maintains in his third assignment of error that the trial court failed to consider the R.C. 3109.04(F)(1) "best interest" requirements, and that the decision is not supported by the manifest weight of the evidence. This Court disagrees.
A decision will not be reversed as being against the manifest weight of the evidence unless the judgment is "so manifestly contrary to the natural and reasonable inferences to be drawn from the evidence as to produce a result in complete violation of substantial justice[.]" Hardiman v. Zep Mfg. Co. (1984),14 Ohio App.3d 222, 226, quoting Royer v. Bd. ofEdn. (1977), 51 Ohio App.2d 17, 20. In reviewing whether a civil judgment is against the manifest weight of the evidence, this Court must:
 review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.
Frederick v. Born (Aug. 21, 1996), Lorain App. No. 95CA006286, unreported, quoting State v. Shue (1994), 97 Ohio App.3d 459, 466.
Essentially, Given's argument that the judgment is against the manifest weight of the evidence is based on Given's opinion regarding the credibility of the witnesses and the weight of the evidence.[2] For example, Given asserts that because the court determined that it was in Brian's best interest to remain in Sanzone's custody, the court must not have considered Sanzone's admission on the stand that she had struck her daughter.
"A [judgment] is not against the manifest weight of the evidence merely because there is conflicting evidence before the trier of fact." State v. Haydon (Dec. 22, 1999), Summit App. No. 19094, unreported, appeal not allowed (2000), 88 Ohio St.3d 1482, citing State v. Gilliam, (Aug. 12, 1998), Lorain App. No. 97CA006757, unreported, appeal not allowed (2000), 88 Ohio St.3d 1482. Additionally, it is well established that "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus.
After a review of the record, this Court cannot conclude that the trial court lost its way or created a manifest miscarriage of justice such that the judgment must be reversed. Accordingly, Given's third assignment of error is overruled.
 ASSIGNMENT OF ERROR IV THE TRIAL COURT ERRED AS A MATTER OF LAW IN DETERMINING THERE WAS NO CHANGE IN CIRCUMSTANCES UNDER R[.]C[.](E)(1) AND THEN MODIFYING THE PRIOR DECREE SO AS TO MODIFY THE PARENTAL RIGHTS OF PLAINTIFF.
In his final assignment of error, Given claims that the trial court erred in modifying the visitation schedule. He argues that the court was without authority to do so because the court found that there had not been a change in circumstances. This Court disagrees.
There is no requirement to show that a change in circumstances has occurred in order for a court to modify visitation rights. Braatz v. Braatz (1999), 85 Ohio St.3d 40, syllabus. Rather, a trial court is required to consider the fifteen enumerated factors in R.C. 3109.051(D), and then the court has sound discretion to determine a visitation plan that is in the best interest of the child. Id.
In the instant case, neither party actually filed a motion to modify visitation. However, the parties spent considerable time throughout the lower court proceedings in addressing the issue of visitation. Neither party objected to a modification. Rather, based on the fact that Given had moved across the country, both parties agreed to submit the visitation issue to the trial court. In its final order, the trial court adjusted the visitation based upon its decision that Brian should remain with his mother. Given has not argued that the lower court improperly considered the factors under R.C. 3109.051(D).
This Court finds no merit in Given's fourth assignment of error. It is overruled.
 III.
The judgment of the juvenile court is affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to appellant.
Exceptions.
 ___________________ DONNA J. CARR
BATCHELDER, P.J., WHITMORE, J. CONCUR.
[1] The parties settled the custody issue with respect to Christina. Christina is not a subject of this appeal.
[2] Given has also argued in his third assignment of error that "[t]he trial court did not make application of R.C. 3109.04(F)(1) as it found that there had been no change in circumstances warranting a further review." However, we rejected this argument under Given's second assignment of error.